IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| SUZANNE SMITH | : | DOCKET NO. 2:23-CV-04038 |
| | : | |
| Plaintiff, | : | |
| | : | |
| HMP COMMUNICATIONS, LLC | : | |
| | : | |
| Defendant, | : | |
| | : | |

<u>DEFENDANT, HMP COMMUNICATIONS, LLC'S PRE-TRIAL MEMORANDUM</u>

In this action, Suzanne Smith ("Ms. Smith" or "Plaintiff") has brought claims against HMP Communications, LLC ("HMP"), for: Violation of the Civil Rights Act (Count I), Violation of the Family Medical Leave Act (Count II), and Violation of Pennsylvania Human Relations Act (Count III).

I.   SUMMARY OF FACTS

On July 23, 2019, Plaintiff began her employment with HMP as a Senior Manager, National Accounts. At various times during her employment, her direct supervisor was either Ms. Stewart or Jeff Hennessy, Jr. ("Mr. Hennessy"), who is President of HMP Omnimedia. In her role, Ms. Smith and Ms. Stewart were primarily responsible to service customer accounts related to the Journal of Clinical Pathways, Oncology Clinical Pathways, Clinical Pathways University and Great Debates and Updates in Oncology Pharmacy brands (collectively, "Clinical Pathways"). As part of Plaintiff's Offer Letter, she was explicitly informed that assigned accounts may change at any time at the sole discretion of HMP.

At the time of her employment, Ms. Smith was provided the 2010 Employee Handbook, which outlines Ms. Smith's entitlement to take leave under the FMLA. Ms. Smith signed and acknowledged the Employee Handbook which she received with her employment offer in 2019. She was provided with a clear, written notice detailing her entitlement to take leave under the FMLA.

On or about May 24, 2021, Ms. Stewart voluntarily resigned from her position with HMP. After Ms. Stewart left the company, Ms. Smith was the only employee who remained with the Clinical Pathways group. Naturally, Ms. Smith transferred almost all of Ms. Stewart's accounts upon her departure. In fact, following Ms. Stewart's departure, Ms. Smith was elevated to the position of Director of Clinical Pathways, assuming the responsibilities formerly held by Ms. Stewart as the Senior Director of Market Access prior to her exit.

During that interim period, HMP reassigned a sales representative, Alyssa Castellano ("Ms. Castellano") from another department to the Clinical Pathways group in 2021. Months later, on September 2021, Ms. Stewart reached out to Mr. Hennessy interested in being rehired into HMP for a role relating to "special projects". Mr. Hennessy and Ms. Stewart met on October 16, 2021 and determined Ms. Stewart would rejoin HMP by early 2022. At this point, Mr. Hennessy was unaware of Ms. Smith's pregnancy, as Ms. Smith did not share her pregnancy news with Mr. Hennessy until December 2021.

On or about January 25, 2022, Ms. Smith shared with HPM her requested plans for her maternity leave, to which she specifically requested paid leave involving a combination of vacation time and adjusted schedules. She noted to Human Resources that she had already

shared her request with Mr. Hennessy and he agreed with the same. There is no dispute that HMP granted Ms. Smith's proposed paid leave schedule for maternity leave.

Ms. Stewart formally returned to the Defendant on March 1, 2022. She was initially hired to sell special projects to the same clients which were managed by Plaintiff and Ms. Castellano. Mr. Hennessy learned that Plaintiff and Ms. Castellano were excluding Ms. Stewart from sales calls, so Mr. Hennessy made the decision to add Ms. Stewart back to the Clinical Pathways team alongside Plaintiff and Ms. Castellano.

As a result of Ms. Stewart's addition to the Clinical Pathways team, she received sales accounts from both Plaintiff and Ms. Castellano. Three of the five accounts which were transferred from Plaintiff to Ms. Stewart were managed by Ms. Stewart before she originally resigned in May, 2021. Mr. Hennessy met with Plaintiff to discuss this redistribution of accounts. After hearing Plaintiff's concerns, Mr. Hennessy allowed Plaintiff to keep two of the accounts which were initially to be transferred. Additionally, HMP continued to pay Plaintiff on those sales in the pipeline to the transferred accounts before the accounts were transferred. Indeed, HMP continued to pay Plaintiff commission on these accounts until her August, 2022 resignation.

In April 2022, Ms. Smith followed through with her maternity leave plan. On her own volition, Ms. Smith intended to use her paid vacation time for leave when delivering her baby and thereafter requested to work an adjusted schedule beginning May 2022. Ms. Smith volunteered that she intended to keep up on emails and be available to the management and team throughout as her adjusted schedule, as she did not plan to take a typical FMLA. In fact,

during this adjusted schedule, Ms. Smith chose to go to a work-related event in Chicago. There is no evidence that either Mr. Hennessy or Ms. Stewart directed Plaintiff to perform work while on paid vacation, or required her to perform work outside of her requested part-time schedule.

On or about August 19, 2022, without any prior notice, Ms. Smith abruptly resigned from her position alleging demotion in role, removal/reallocation of major accounts that limited her avenues for getting proper compensation, client fulfilment issues, and lack of career advancement during her pregnancy. At no point prior to her resignation letter did Plaintiff complain about any type of discrimination or mistreatment due to her pregnancy or request for maternity leave.

In fact, Discovery found that Plaintiff solicited a recruiter as early as January, 2022 to see new employment opportunities, well before Ms. Stewart was formally rehired into HMP and before any accounts were transferred. Additionally, at her deposition, Plaintiff testified there was no one single event which motivated her decision to resign from employment at HMP and that she would not have resigned her employment had she not had a new job offer in hand. Indeed, Plaintiff resigned from HMP to accept a position with Platform Q – a direct competitor with HMP – which offered a higher base salary and commissions package. As such, Defendant contends that Plaintiff received a paid maternity leave which would be beyond what the FMLA would require and that she resigned of her own volition because she solicited and found a better job offer.

## II.  DAMAGES

Defendant takes the position that Plaintiff has not sustained any economic damages in this claim. Plaintiff has not provided any monetary calculations in support of her alleged damages in this matter. Plaintiff has also not provided Defendant notice of any expert witnesses who would testify as to Plaintiff's calculated loss in the dispute of this matter.

Although Defendant transferred certain sales accounts from Plaintiff in March, 2022, Defendant continued to pay her commissions on those accounts until she gave notice of her resignation on August 19, 2022. In total, HMP paid Plaintiff $23,974 in commissions from January, 2022 through August 31, 2022. By the undersigned counsel's computations, sales from those accounts generated an additional $5,613 in payable commission through the end of 2022. Additionally, those same accounts generated a total commission of $13,182 for 2023.

Plaintiff, however, received an increase in her base salary when she left HMP to work for Platform Q in September, 2022, from $115,000 at HMP to $137,500 to Platform Q. Plaintiff's increase in base salary from taking the Platform Q position, totaling $7,500 gross from September, 2022 through December, 2022, would effectively mitigate the $5,613 in payable commissions if Plaintiff remained with HMP and the five contested accounts had never been transferred to Ms. Stewart. Additionally, Plaintiff was eligible for additional commissions with PlatformQ to continue to increase her compensation beyond her base salary. Whether Plaintiff generated those commissions is pursuant to her own control.

Plaintiff was discharged Platform Q in April, 2023 and apparently unemployed for one month, but then she accepted another position with another competitor in HMP's space –

Patient Discovery – where she was paid a $140,000 base salary and a $5,000 signing bonus. Plaintiff was also eligible to earn commissions in this role with Patient Discovery. Although Plaintiff failed to provide her 2023 W-2 and tax returns in discovery of this matter, based on a review of Platform Q and Patient Discovery records, Defendant calculates that Plaintiff earned a total amount of compensation of $174,935.94 from Platform Q and Patient Discovery in 2023. Defendant contends Plaintiff would have earned less than that gross amount in 2023, even if she remained employed with HMP **and** none of her accounts were transferred in March, 2022.

Plaintiff remained employed with Patient Discovery until March, 2024, when her position was eliminated. Plaintiff was recently hired as Director of Business Development at BroadcastMed, yet another competitor in HMP's space, at some point in May, 2024. Plaintiff did not provide Defendant this information but instead HMP discovered it via a LinkedIn account search. Plaintiff has not disclosed what she presently makes in compensation with Broadcast Med, but considering this is a "Director" position and Plaintiff's base salary increased with every new job she accepted after voluntarily resigning from HMP, Defendant believes Plaintiff's economic losses, if there were any, are completely mitigated.

Defendant also contends Plaintiff will not be able to set forth demonstrative evidence for compensatory damages related to this case. Plaintiff sought therapy from July, 2022 until May, 2023, and those notes yield the sole stressors in her life were her family life and stress from her new position at Platform Q. There is no reference to an increase in stress connected to her employment with HMP or her decision to resign her employment. Additionally, nothing within Plaintiff's medical records connect her April, 2022 delivery with any work-

related stress at HMP. Indeed, there is evidence that Plaintiff's induction date was moved up due to a diagnosis of fetal tachycardia, which was related to Plaintiff's use of ADHD medication. Additionally, Defendant intends to set forth expert testimony that there is no evidence of any work-related event causing Plaintiff any type of compensable harm.

As to punitive damages, there is no evidence in the record which would suggest Defendant acted with the requisite standard of malice or recklessness to make an award of punitive damages appropriate. These damages are further unavailable for recovery in Plaintiff's claims pursuant to the Pennsylvania Human Relations Act and Family Medical Leave Act.

### III. WITNESSES WHO MAY BE CALLED AT TRIAL

#### A. Expert Witnesses to be Called:

a) Irene C. Mendelsohn, M.S., CRC
   1226 N. Woodbine Avenue
   Penn Valley, PA 19072-1243
   *Dr. Mendelsohn is a vocational counselor and will testify to her opinion that Ms. Smith's position that she experienced pregnancy discrimination at HMP and that such discrimination in her leaving the company is unsupported.*

b) Dr. Amit Bhavsar
   Expert Institute
   120 Broadway
   22nd Fl., Ste. A
   New York, NY 10005
   *Dr. Bhavsar is an obstetrics and gynecology specialist. He will testify that stress did not cause Ms. Smith to move up the induction date of her child's birth, that Ms. Smith did not have a documented history of stress, anxiety or depression, and that her infant did not suffer from complications of prematurity.*

c) Gary S. Barach
   Barach Consulting Group

220 West Gay Street
West Chester, PA 19380

*Mr. Barach is a forensic economic and financial expert. He will testify to his evaluation of the economic damages that resulted from Ms. Smith's averments that HMP violated her civil rights.*

d) Jason Prinster, PhD
Expert Institute
120 Broadway
22nd Fl., Ste. A
New York, NY 10005

*Dr. Prinster is a licensed psychologist who will testify that Ms. Smith had several psychiatric diagnoses that both pre-date and overlap her claim of discrimination and her claim of damages that include "emotional distress, mental anguish, humiliation, pain, and suffering." He will also testify that the timeline of Ms. Smith's conditions that were treated for as early as 2017 suggest that there were other drivers or "causes" of Ms. Smith's emotional distress prior to her employment with HMP.*

B. **Fact Witnesses to be Called:**

a) Jeff Hennessy, Jr.
President of HMP Omnimedia
70 E. Swedesford Rd.
Media, PA 19355

*Mr. Hennessy will testify as to HMP's policies, account distributions, and HMP's internal organizational structure. He will also testify to the meetings and communications he had with Ms. Smith as well as testify to why Ms. Smith was put on a performance plan.*

b) Sara Stewart
Vice President, Oncology Market Access at HMP
70 E. Swedesford Rd.
Media, PA 19355

*Ms. Stewart will testify as to her role at HMP, her experience working with Plaintiff, and the accounts she worked on throughout her employment at HMP*

c) Anthony Mancini
Chief Human Resources Officer and EVP of Operations at HMP
70 E. Swedesford Rd.
Media, PA 19355

      *Mr. Mancini has not been deposed but he will be called to testify as to HMP's policies relating to FMLA and pregnancy discrimination.*

   d)   Plaintiff, Suzanne Smith
      *Plaintiff will be called on cross-examination if Defendant is not afforded directed verdict after she puts forward her case in chief.*

   e)   Briana Matos, The Recruit Group
      *Ms. Matos has not been deposed, but she will be called to authenticate email communications with Plaintiff pertaining to her job search while still employed with HMP as well as conversations she had with Plaintiff as to her state of mind in August, 2022, the time she resigned.*

   f)   David Murphy
      Executive Vice President, PlatformQ Health, Inc.
      100 Crescent Road
      Needham, MA 02494
      *Mr. Murphy has not been deposed, but he will be called to authenticate PlatformQ business records and also provide testimony about Plaintiff's opportunity to mitigate her damages by selling to accounts and generate commissions.*

      Plaintiff/Counterclaim Defendant reserves the right to call as a witness, on direct or cross examination, anyone who appears on Defendant/Counterclaim Plaintiff's witness list.

## IV.   LIST OF ANTICIPATED EXHIBITS

1. Offer Letter from HMP Communications, LLC to Ms. Smith sent July 23, 2019;

2. HMP Work For Hire Agreement sent to Ms. Smith dated July 23, 2019;

3. Associate's Major Accomplishments & Goals 2019;

4. Associate's Major Accomplishments & Goals 2020;

5. National Accounts Manager Commission Plan (HMP 0018-0021);

6. Ms. Smith's Director, Clinical Pathways Compensation Plan I dated June 1, 2021 (HMP 0022-0025);

7. Director, Clinical Pathways Compensation Plan II, dated January 2, 2022 (HMP 0026-0029);

8. Emails from Jeff Hennessy Jr. on Plaintiff's Performance, dated October 31, 2019;

9. Performance Improvement Plan I, dated July 10, 2020;

10. Performance Improvement Plan II, dated April 22, 2022 (HMP 0057-0058);

11. Grow Therapy Notes, dated July 26, 2022 (GROW 004-006);

12. Camp Time Off Request, dated July 17, 2020;

13. Email from Jeff Hennessy Jr. To Suzie, dated June 8, 2021;

14. Texts between Jeff Hennessy Jr. and Suzie, dated March 22, 2022;

15. Text messages between Suzie. Smith, Sara Stewart, and Jeff Hennessy Jr., dated April 12, 2022;

16. Emails between Suzie Smith and Rich Lancia regarding maternity leave, dated January 25, 2022;

17. Suzie Smith's Leave Schedule, dated April 13, 2022 (HMP0051);

18. Emails between Suzie Smith and Todd White, dated May 16, 2022;

19. Text messages between Suzie Smith and Alyssa Castellano, dated January 31, 2022;

20. Text messages between Suzie Smith and Gary Gavarone, dated February 22, 2022;

21. Sales Group Text Message;

22. Text message between Suzie Smith and Dan Wise, dated March 3, 2022;

23. Text Message between Suzie Smith and Sara Stewart, dated April 26, 2022;

24. Text Message between Suzie Smith and Brother Ryan, dated August 17, 2022;

25. Suzie Smith Deposition Transcripts (dated April 9, 2024 and April 11, 2024);

26. Suzie Smith Deposition Exhibits;

27. Sara Stewart Deposition Transcript, dated April 25, 2024;

28. Jeff Hennessy Jr. Deposition Transcript, dated April 25, 2024;

29. Erin Statmore Deposition Transcript, dated April 25, 2024;

30. HMP Employee Handbook (HMP00206-00247);

31. HMP Handbook Acknowledgement, dated August 19, 2019 (HMP 0038);

32. HR New Hire Follow Up with Suzie Smith, dated November 19, 2019 (HMP0044);

33. Suzie Smith's Resignation Letter from HMP, dated August 23, 2022;

34. 2022 Smith Compensation Stub (HMP0009);

35. Suzie Smith 2020 W2;

36. Suzie Smith 2021 W2;

37. Suzie Smith 2022 W2;

38. Emails between Suzie Smith, Sara Stewart, Jeff Hennessy Jr., and Alyssa Castellano Regarding Final Account Distribution, dated April 5, 2022;

39. JCP Account List, dated April 5, 2022;

40. JCP Account List for Suzie Smith, Sara Stewart, and Alyssa Castellano (HMP 00180);

41. JCP Account List 20.21 from Maghub (HMP 00181);

42. Spreadsheet of Revenue for Suzie Smith (HMP 00198 – 00201);

43. Spreadsheet of Contacts in Accounts for Sara Stewart (HMP 00202 – 00205);

44. JCP Sales, Jan-June 2022;

45. OCPC 2022 Sales;

46. 2022-2023 HMP Sales Order Detail;

47. All Other HMP Documents (HMP0001-HMP0300);

48. Email from Brittany Shoul at MCI confirming Suzie Smith's last day (000001-000015);

49. Recruit Group Communication Log with Suzie Smith (00001 – 00004);

50. Platform Q Documents (00001-00031);

51. Patient Discovery Solutions Documents regarding Suzie Smith's employment (001-017);

52. Chester County Hospital Records (00001-00306);

53. Chester County Domestic Records (0001-0375);

54. D'urso Pediatrics Records (0001-0022);

55. Penn PCP Records (00001-00237);

56. Penn OBGYN Medical Records (00001-00040);

57. Franklin Square Hospital Records (00001-00061);

58. Grow Therapy Additional Documents;

59. Irene Mendelsohn Expert Report, dated April 18, 2024;

60. Dr. Bhavsar Final Report;

61. Gary Barach Economics Preliminary Report;

62. Dr. Prinster Psychological Report;

63. Ms. Smith's Complaint, dated October 23, 2023;

64. Jeff Hennessy Jr. Affidavit, dated December 13, 2023;

65. Suzie Smith Affidavit, dated March 21, 2024;

66. Suzie Smith's Responses to HMP's First Set of Interrogatories, dated February 5, 2024;

67. Suzie Smith's Responses to HMP's First Request for Production of Documents March 22, 2024;

68. Verizon Records;

69. Verizon Call Logs;

70. Jason Prinster's Fee Schedule

Defendant reserves the right to utilize as an exhibit (a) any documents or information which Plaintiff discloses relating to her alleged damages up through and including trial; and (b) any documents which Plaintiff utilizes in her case-in-chief or otherwise at trial; and (c) any documents or exhibits which Plaintiff identifies on her Pretrial Memorandum.

V. DEPOSITION DESIGNATIONS

HMP submits the below deposition designations of Plaintiff, Suzanne Smith, to present to the jury. HMP reserves the right to supplement and/or amend these designations based upon Plaintiff's presentation of the evidence:

**Page/Line**
- 21:13-21:16
- 24-25
- 27-28
- 30:21-31:21
- 34:09-35:17
- 35:24-36:06
- 40,41
- 45:13-45:25

- 49:03 – 49:09
- 51:19-22
- 64:12-19
- 64:22-69:24
- 65:02-65:21
- 65:18-66:20
- 66:21-67:09
- 69:03-69:08
- 70:04-18
- 74:21-75:16
- 86:14-87:03
- 88:13-88:20
- 91:19-92:16
- 93:11-96:13
- 162:06-162:13
- 163:15-164:01
- 164:02-164:17
- 166:04-166:12
- 171:20-173:04
- 172:05-172:24
- 181:03-181:24
- 182:15-188:04
- 182:18-183:12
- 194:19-195:22
- 195:05-197:14
- 198:03-198:06.
- 198:17-198:24
- 200:19-201:05

## VI.    LEGAL ISSUES WHICH WILL REQUIRE A RULING

Currently, Defendant's Motion for Summary Judgment is pending before this Court. Such issues that require a ruling are as follows:

1. HMP disputes Plaintiff's FMLA interference claims, because there is no evidence that she gave notice of her intention to take FMLA-designated leave and because she was not denied any FMLA-leave entitlements.

See Beffert vs. Pa. Dep't. of Pub. Welfare, No. 05-43, 2006 U.S. Dist. LEXIS 4277 at *7-8 (E.D. Pa. February 3, 2006)

2. HMP disputes Plaintiff's assertion that her conversation with Mr. Hennessy triggered HMP's FMLA notice obligations.

See Gravel vs. Costco Wholesale Corp., 230 F.Supp. 3d 430 (E.D. Pa. 2017)

3. HMP disputes Plaintiff was deprived FMLA leave entitlements because she cannot show any failure to provide her with notice infringed upon her FMLA protected rights and entitlements.

See Callison vs. City of Philadelphia, 430 F.3d 117, 119 (3rd Cir. 2005)

4. HMP disputes Plaintiff's discrimination and retaliation claims because there is no evidence that she suffered a material adverse employment action under circumstances suggesting a causal link with discriminatory or retaliatory motive.

See Zielinski vs. Pulte Group, Inc., No. 10-6761, 2011 U.S. Dist. LEXIS 79285 at *6 (E.D. Pa. July 21, 2011)

5. HMP disputes that Plaintiff suffered an adverse employment action because she suffered no tangible monetary loss from the redistribution of accounts.

See Goosby vs. Johnson & Johnson Med., Inc., 228 F.3d 313, 319 (3rd Cir)

6. HMP disputes that Plaintiff can establish a causal nexus between her account reallocation and any discriminatory or retaliatory intent.

See Kachmar vs. Sungard Data Sys., 109 F.3d 173 (1997)

7. HMP disputes that Plaintiff's voluntary resignation is a "constructive discharge" because there are no facts suggesting a causal link between her resignation and any protected class or category.

See <u>Fuentes vs. Perskie</u> 32 F.3d 759, 765 (3rd Cir. 1994)

HMP will file its motions *in limine* on or before May 24, 2024, with supporting memoranda of law, which will each describe in detail the bases for HMP's objections to certain evidence that HMP expects Plaintiff to proffer at trial. Specifically, HMP plans to dispute the following:

1. Plaintiff's claims for punitive damages pursuant to the Family Medical Leave Act and Pennsylvania Human Relations Act should be dismissed because neither law allows for recovery of such damages. See <u>McFadden vs. Biomedical Sys. Corp</u>., No. 13-4487, 2014 U.S. Dist. LEXIS 2363 at *15-16 (E.D.Pa. January 9, 2014) (dismissing claims for punitive damages under the PHRA); 29 U.S.C. § 2617(a); <u>see also</u> <u>Spain vs. Colonial Penn Ins. Co.</u>, No. 97-4010, 1997 U.S. Dist. LEXIS 19788 (E.D. Pa. December 15, 1997).

2. HMP disputes Plaintiff's alleged damages related to "increased cost of regular pregnancy vs. an earlier induction" where no evidence of such costs was produced in discovery". <u>Moorhead vs. Crozer</u>, 765 A.2d 86, 789 (Pa. 2001) (*abrogated for other reasons*) (quoting <u>Goodhart vs. Penn R.R. Co.</u>, 35 A. 191, 192 (Pa. 1896) ("The expenses for which a plaintiff may recover must be such as have been actually paid, or such as, in the judgment of the jury, are reasonably necessary to be incurred.").

3. HMP disputes Plaintiff's alleged damages related to "costs associated with treatment of medical issued caused by the early birth" where no evidence of such costs was produced in discovery". See Id.

4. HMP disputes Plaintiff's alleged damages related to the value of inflated commissions, up to $150,000, for the five transferred accounts where no evidence was produced in discovery supporting this calculation. See Kearns vs. Clark, et al., 493 A.2d 1358, 1364 (Pa. Super. 1985); Benjamin vs. Peter's Farm Condominium Owners Assoc., 820 F.2d 640, 642-43 (3rd Cir. 1987) ("Although mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation.").

5. HMP disputes Plaintiff's alleged damages related to "reduced compensation for period while Plaintiff was on paid leave," as this is not a compensable damage under the FMLA, Pregnancy Discrimination Act or PHRA. See 29 U.S.C. §2612(d)(2); Twillie vs. Erie Sch. Dist., 575 Fed. App'x 28 (3rd Cir. August 6, 2014) (encouraging an employee to use accrued paid leave before using unpaid FMLA leave is not prohibited).

6. Plaintiff cannot claim damages based on her allegation that she developed gestational hypertension from her employment where (a) there is no evidence of causation between her employment claims and that condition, and (b) if there were, such damages would be precluded by the Pennsylvania Workers' Compensation Act. Poyser vs. Newman & Co., 522 A.2d 548 (Pa. 1985).

|  |  |
|---|---|
| | **MARGOLIS EDELSTEIN** |
| BY: | */s/ Michael Miller* |
| | MICHAEL R. MILLER, ESQUIRE |
| | mmiller@margolisedelstein.com |
| | The Curtis Center, Suite 400E |
| | 170 S. Independence Mall West |
| | Philadelphia, Pennsylvania 19106 |
| | Tel: 215.931.5828 |
| | Fax: 215.922.1772 |
| May 17, 2024 | *Counsel for Defendant* |